**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAURIE L. DURANEY,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:07cv13 |
| | ) | **Electronic Filing** |
| **WASHINGTON MUTUAL BANK F.A.,** | ) | |
| **SHAPIRO & KREISMAN LLC, KEVIN** | ) | |
| **DISKIN, ESQ., MEGAN D.H. SMITH,** | ) | |
| **ESQ.**, and **LINDSEY HANSEN,** | ) | |
| **ESQ.**, and **LINDSEY HANSEN,** | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

September 11, 2008

## I.    INTRODUCTION

Plaintiff, Laurie L. Duraney ("Duraney" or "Plaintiff"), brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"), seeking to challenge actions taken by Defendants prior to and during a mortgage foreclosure action (the "Foreclosure Action") that resulted in summary judgment being entered against her in the Court of Common Pleas of Allegheny County Pennsylvania on December 19, 2006.  Defendants in the action are: Washington Mutual Bank F.A. ("WAMU"), the foreclosing bank; Shapiro & Kreisman LLC ("S&K"), the law firm that represented WAMU in the Foreclosure Action; Attorneys Kevin Diskin ("Diskin") and Megan Smith ("Smith"), S&K attorneys who handled the litigation; and Lindsey Hansen ("Hansen")(together the "S&K Defendants"), a legal assistant with S&K. Pending before the Court are  motions for summary judgment filed on behalf of Duraney, WAMU and the S&K Defendants.

After careful consideration of the motions, the memoranda of the parties, and the entire record, the Court will grant Defendants' motions for summary judgment and deny Plaintiff's motion.

## II.    PROCEDURAL HISTORY

Plaintiff's complaint was filed in this Court on January 5, 2007.[1]  Jurisdiction is based on 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).  Count I is an FDCPA claim against all Defendants except Hansen.  Count II is an FDCPA claim against Hansen.  Count III is a common law libel and slander claim against all Defendants except Hansen.  Count IV is a common law libel and slander claim against WAMU relating to the statement in its letter of September 28, 2005 that Plaintiff had "refused to pay."  Count V is a breach of contract claim against WAMU.  Count VI alleges bad faith by WAMU.  Count VII asks for an injunction against all Defendants from carrying forward the Foreclosure Action or attempting to assess or collect fees or costs.  Count VIII is a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. §§ 201.1 to 201.9.3 ("UTPCPL") and the Pennsylvania Fair Credit Extension Uniformity Act, 73 PA. STAT. §§ 2270.1 to 2270.6 ("FCEUA"), asserted against all Defendants. Count IX alleges that all Defendants are liable to her under theories of joint and several liability.

On January 31, 2008, various motions to dismiss filed by the Defendants were granted in part and denied in part.  As a result, only the FDCPA claims in Counts I and II remain.  The motions for summary judgment were filed on March 17, 2008.

## III.    STATEMENT OF THE CASE

Plaintiff is an adult individual presently residing at 1891 Riverview Drive, Wisconsin Rapids, Wisconsin 54494.  (Duraney Dep. at 8.)[2]  Previously, she lived at 206 Cherry Street, Whitaker, Pennsylvania, in a house that is the subject of this dispute.  (Id.)

WAMU is a Federal Association with its home office located in Henderson, Nevada. (WAMU Answer ¶ 2.)[3]  S&K is a law firm located at 3600 Horizon Drive, Suite 150, King of

---

[1]This statement is based solely on the docket sheet.  Because the Court is not addressing the statute of limitations argument, the issue of whether Plaintiff's complaint was "filed" for statute of limitations purposes on December 19, 2006 is not being decided in this Opinion.

[2]WAMU App. (Docket No. 80) Ex. 14.

[3]Docket No. 61.

Prussia, PA 19406.  (S&K Defs. Answer ¶ 3.)[4]  At the time of the events at issue, Diskin was the managing attorney at S&K and supervised both Smith and Hansen, Smith was an attorney with the firm, and Hansen was a legal assistant.  They all worked at S&K's King of Prussia office.  (Diskin Answers Pl.'s First Set Req. Admis. #36, 37, 65;[5] Smith Answer Pl.'s First Set Req. Admis. #65;[6] S&K Defs.' Answer ¶ 6; Hansen Answer Pl.'s First Set Req. Admis. #38, 39.[7])

S&K has served as legal counsel in the filing of numerous complaints in mortgage foreclosure in the Commonwealth of Pennsylvania in which notice must be given pursuant to both Act 6 and Act 91, and Smith and Hansen have been involved in such matters as well.  (S&K Defs.' Answer Pl.'s First Set Req. Admis. #63.)[8]

<u>Plaintiff's Mortgage and Note</u>

Plaintiff purchased a home in Whitaker Borough, Allegheny County, Pennsylvania, in July 1996.  (Duraney Dep. at 15.)  In order to finance the purchase, she entered into a note and thirty-year mortgage with PNC Mortgage Corporation of America ("PNC"), in which she agreed to make monthly payments to PNC to satisfy the mortgage.  (Duraney Dep. at 16-19; see WAMU App. Exs. 1 & 2.)  WAMU acquired Plaintiff's mortgage and note as part of its purchase of PNC's residential mortgage business in 2001.  (WAMU Answer ¶ 12.)

<u>The First Default</u>

On May 31, 2005 and again on June 2, 2005, Plaintiff missed a mortgage payment when WAMU attempted to automatically withdraw the payment from her bank account but the account had insufficient funds.  (WAMU Answer ¶¶ 12-13.)  WAMU sent Plaintiff a letter on June 7, 2005, notifying her of the missed payment.  (Duraney Dep. at 171-72; see WAMU App. Ex. 3.)

---

[4]Docket No. 60.

[5]Pl.'s App. Supp. Mot. Summ. J., Docket No. 86-54.

[6]Docket No. 86-55.

[7]Docket No. 86-57.

[8]Docket No. 86-56.

She does not dispute that a payment due to WAMU on July 1, 2005, was missed. (Duraney Dep. at 38.) Under the terms of the note and mortgage, the missed payment constituted a default which authorized WAMU to accelerate the balance due on the note and mortgage. (Note and Mortgage, App. Exs. 1 & 2.)

Plaintiff took no steps to cure the default on the note and mortgage between June 7, 2005 and September 14, 2005. (Duraney Dep. at 30-34.) WAMU thereafter sent Plaintiff an "Act 91 Notice" dated September 14, 2005, further informing her of the default. (Duraney Dep. at 33; Docket No. 86-6.) WAMU contends that the "Act 91 Notice" dated September 14, 2005, was in compliance with all Pennsylvania pre-foreclosure notice requirements and that it accurately recited all amounts due and owing to WAMU. Plaintiff responds that the notice consisted of only four sheets of paper and that it was insufficient because it did not contain the name and listing of any consumer credit counseling agencies as required under Pennsylvania law, 35 PA. CONS. STAT. § 1680.401c. (Duraney Aff. at 1.)[9] The September 14, 2005 letter stated that "we may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report."

The September 28, 2005 Agreement

WAMU and Plaintiff entered into an arrangement on September 28, 2005, whereby she was given the opportunity to cure the default by making a series of six payments to WAMU beginning September 30, 2005 and ending February 15, 2006. (WAMU App. Ex. 4; Duraney Dep. at 174-75.) The six payments would allow her to catch up on the outstanding principal, interest, and escrow she owed WAMU. The payment arrangement was set forth in a letter dated September 28, 2005, from WAMU to Plaintiff. (WAMU App. Ex. 4.) The letter stated in boldfaced print that "we have told a credit bureau about a late payment, missed payment or other default on your account." WAMU admits that it furnished a report of late payment to a credit reporting agency. (WAMU Resp. Pl.'s Req. Admis. #23.) The S&K Defendants do not participate in credit reporting and, in this instance, did not furnish information about Plaintiff to a

---

[9]Docket No. 86-26.

credit reporting agency. (S&K Defs. Answer Pl.'s First Req. Admis. #24, 25.)

In the letter, WAMU informed Duraney that it would automatically withdraw the first of the six payments, and that she was to mail the other payments to WAMU. Plaintiff correctly notes that the letter did not describe how the payments would be made. As described below, the arrangement regarding the method of payment for the first installment appears to have been verbal.

On September 30, 2005, the first payment of $715.00 ($700.00, plus a $15.00 service fee) was automatically deducted by a one-time "Just-in-Time" electronic funds transfer. A letter sent to her confirming this transaction stated that: "As per your verbal authorization on September 28, 2005, this one-time request will be processed in the amount of $715.00, and will be applied to the loan as of September 30, 2005." (WAMU App. Ex. 5; Duraney Dep. at 185-86.) There is no dispute concerning the $15.00 service fee.

The Second Default

According to the September 28, 2005 payment arrangement, the second payment was due to WAMU on October 15, 2005. Plaintiff did not mail any payment to WAMU on that date or thereafter. She believed that the bank would automatically withdraw the funds from her account. (Duraney Aff. at 1.) WAMU believed that Plaintiff was obligated to mail in the payment. As noted above, the September 30, 2005 letter referred to her "one-time request" for the first payment to be made by automatic withdrawal.

Plaintiff's failure to make the second payment placed her in default of the September 28, 2005 repayment agreement. On October 24, 2005, WAMU sent her another "Act 91 Notice" as the required pre-foreclosure notice in Pennsylvania. (WAMU App. Ex. 6; Duraney Dep. at 190-91.)

WAMU asserts that the "Act 91 Notice" dated October 24, 2005, was in compliance with all Pennsylvania pre-foreclosure notice requirements and that it accurately recited all amounts due and owing. Plaintiff again contends that the notice did not contain the names and listing of any consumer credit counseling agencies as required under Pennsylvania law. (Duraney Dep. at 193.) In addition, she maintains that the October 24, 2005 notice did not reflect the full payment

of $700.00 made on September 30, 2005. Duraney further contends that because she had paid $700.00, $454.98 of which covered the July 1 payment, the remaining $245.02 should have been credited towards the August 1 payment. The October 24, 2005 notice, however, specifically referred to $245.02 as a "credit" that was subtracted from the amounts she owed. (WAMU App. Ex. 6.)

Finally, Duraney states that she believed that she could and should ignore any default notices sent to her after September 28, 2005 because the letter memorializing the repayment agreement stated that "You may still receive billing statements or default letters from Washington Mutual; however as long as you are in compliance with the terms of this agreement, you may disregard the notices." (Duraney Dep. at 178; WAMU App. Ex. 4.) Therefore, she did not respond to the October 24 notice.

WAMU asserts that it made numerous attempts to contact Plaintiff by telephone after service of the Act 91 Notice in October 2005, and thereafter in November 2005. (Duraney Dep. at 45-57, 149-58; WAMU Supp. Resp. Pl.'s Interrog. #18.[10]) It contends that, although she knew that WAMU was attempting to contact her regarding late payments, she made no effort to contact WAMU and make arrangements to bring her note and mortgage current. Plaintiff responds that only one of these phone calls "made live contact" with her (as opposed to her answering machine), that she did not know who was attempting to call her since the callers did not identify themselves, instead leaving only a phone number concerning a "personal business matter," and that the single contact was by a rude man who insulted her to the point where she hung up on him. (Duraney Dep. at 45-63.)

The Foreclosure Action

The Foreclosure Action was commenced by S&K on December 9, 2005, in the Court of Common Pleas of Allegheny County at Docket No. GD 05-032266. (WAMU App. Ex. 7.)

---

[10]Docket No. 86-62. According to this Answer to Plaintiff's Interrogatory, between October and November, 2005, WAMU attempted to reach Plaintiff 14 times, of which a message was left 11 times, twice a call was attempted with no answer, and on one occasion WAMU reached Plaintiff and she hung up on the caller.

WAMU had retained S&K as outside counsel to commence foreclosure proceedings against Plaintiff. (WAMU Supp. Resp. Pl.'s Interrog. #9.)[11] The complaint was served on Plaintiff on December 19, 2005 at 9:50 p.m. (Duraney Dep. at 106.)[12]

On December 20, 2005, Lindsey Hansen of S&K responded by letter to Plaintiff's request for information concerning the amount necessary to reinstate her loan. Hansen wrote as follows:

> Please be advised as of this date the amount due to WASHINGTON MUTUAL BANK is $2,967.04. This amount represents a Reinstatement through January 20, 2006. This amount does not include outstanding attorney's fees or costs associated with this office's handling of the matter. **All figures are subject to verification and may change since we are not authorized to delay the foreclosure action.** Currently, the outstanding attorney fees and costs are $1,219.50.
>
> ...
>
> Therefore, prior to tendering any funds, it will be necessary for you to contact this office and advise of the approximate date you anticipate being able to forward funds to Reinstate. We will then provide you with the amount needed at that time. Any funds forwarded without contacting our office or which are insufficient to Reinstate will be subject to being returned by certified mail. If further information or clarification is necessary, please feel free to contact this office. We look forward to working with you in this matter.

(S&K Defs. App. Ex. J.)[13] Upon receiving this letter, Plaintiff understood that she was being required to pay both $2,967.04 and some amount for attorney fees and costs. (Duraney Dep. at 116, 286.)[14] On December 22, 2005, Plaintiff called Lindsey Hansen of S&K and, according to her own handwritten notes, left a voicemail message for her stating as follows:

> 1) I can pay the $2,967.04 immediately
> 2) I would like an itemized statement because I made a $700 payment on 9/27/05 and this amount does not appear to reflect that
> 3) I cannot pay legal fees in a lump sum & need a payment plan.

---

[11]Docket No. 86-61.

[12]The S&K Defendants contest this statement, noting that Plaintiff testified at her deposition that she was served on December 10, 11 or 12. (Duraney Dep. at 105.) However, a moment later, when shown the service notice which stated that she was served on December 19, she confirmed that this was accurate. (Duraney Dep. at 106.)

[13]Docket No. 75.

[14]S&K Defs. App. Ex. E.

(S&K Defs. App. Ex. G.)

Plaintiff filed an Answer, New Matter and Counterclaim in the Foreclosure Action on January 20, 2006. (WAMU App. Ex. 8.) She raised a number of defenses and claims, arising out of the allegedly defective Act 91 notices:

> 1. The Act 91 notices were incomplete and inaccurate because WAMU failed to provide her with a list of consumer credit counseling agencies.
> 2. She received notice that the amount required to reinstate the mortgage was $2,967.04 and tendered that amount to reinstate the mortgage but WAMU refused to accept it.
> 3. The amounts reflected in the notices were inaccurate.
> 4. WAMU breached an oral agreement to a repayment plan by not automatically deducting the amounts after the first payment.

(WAMU App. Ex. 8 ¶¶ 10-38.) She demanded an accounting and counterclaimed for common law fraud and violations of the UTPCPL.

On that same date, Plaintiff's counsel, William Askin, wrote a letter to Diskin in which he stated that: 1) he was forwarding to S&K payment in the amount of $2,967.04 to reinstate the mortgage; 2) contrary to his prior understanding, his client (Duraney) had not withdrawn funds to pay WAMU's attorney fees and costs and did not have sufficient funds to cover these amounts; and 3) in addition, having spoken with her, he now believed that his client has been subjected to three types of misleading behavior, including failure to provide her with the names of credit counseling agencies, and therefore, she was not required to pay attorney fees and costs. The letter directed S&K to read Plaintiff's Answer, New Matter and Counterclaim. (S&K Defs. App. Ex. F.) Duraney stated that she was informed by Attorney Askin on the evening of January 19, 2006, that the two Act 91 notices WAMU had sent to her improperly failed to provide her with the names, addresses and phone numbers of local consumer credit counseling agencies. (Compl. ¶ 41.)

Duraney purchased three money orders with face values of $1,000, $1,000 and $967.04 on January 20, 2006 and tendered them to Diskin. (Docket No. 86-16.) S&K received these money orders, but refused to accept them. (S&K Answer Pl.'s First Set Req. Admis. #18, 22, 24.) Diskin returned the money orders in a letter dated January 24, 2006, stating that they were insufficient to reinstate her mortgage. (Docket No. 86-21 Ex. C.)

As noted above, Duraney believed that she was not required to pay attorney fees or costs because WAMU had not given her the names and phone numbers of local consumer credit counseling agencies, per Act 91, as an enclosure with the September 14 and October 24, 2005 notices. She also contends that, having never received the listing of agencies, she missed the statutorily mandated right to apply for Homeowner's Emergency Mortgage Assistance Program funds from the Pennsylvania Housing Finance Agency (PHFA); that she withdrew the amounts from her retirement account[15] and thereby lost both the present accumulated value and the future use of the tax free funds and incurred the obligation to pay back the loan with interest; and that she was compelled to take an additional job to generate funds to pay back the retirement fund loan and the cost of defending the Foreclosure Action.

By letter dated January 27, 2006, Attorney Askin tendered the amount of $2,967.04 to WAMU a second time. He sent it to WAMU's Just in Time EFT Processing Center in Milwaukee, Wisconsin. The funds were returned to Plaintiff by letter dated February 6, 2006 because they were insufficient to reinstate the mortgage. (Docket No. 86-15.)

On February 10, 2006, the funds were tendered a third time by Attorney Askin, who sent them to WAMU's Default Cash Operations in Milwaukee. They were returned by letter dated February 21, 2006 as insufficient to reinstate the mortgage. (Docket No. 86-24.)

After Plaintiff made these tenders of $2,967.04, WAMU did not notify a credit reporting agency that she had done so and that it had considered this amount insufficient to reinstate her mortgage. (WAMU Resp. Pl.'s Req. Admis. #24.)

On June 14, 2006, Megan Smith sent a letter to Attorney Askin, in which she responded to his request for information regarding the amount necessary to resolve matters. She wrote that, as of that date, the amount due was $9,278.24, representing reinstatement through June 30, 2006. As with previous letters, this one included the information that he should contact S&K before sending any funds to make sure that attorney fees and costs were correctly calculated. (Pl.'s

---

[15]At her deposition, Plaintiff testified that she initially applied to borrow money from her retirement account to pay for a new furnace, but when she received the funds she used them to tender to WAMU. (Duraney Dep. at 161-62.)

Resp. S&K Defs.' Mot. Summ. J., Docket No. 95-6.)

On October 10, 2006, WAMU filed a motion for summary judgment in the Foreclosure Action, and on November 6, 2006, Plaintiff filed her own motion for summary judgment. She also filed a response to WAMU's motion for summary judgment. On December 19, 2006, WAMU's motion was granted by the Honorable Michael A. Della Vecchia. (WAMU App. Ex. 9.) On that same date, Judge Della Vecchia also denied Plaintiff's motion for summary judgment. (WAMU App. Ex. 10.)

On December 29, 2006, Plaintiff filed a motion for stay of execution and injunction. (Docket No. 86-30.) On January 10, 2007, Judge Della Vecchia entered an order staying the execution for 120 days. (Docket No. 86-33.) S&K wrote to the Sheriff of Allegheny County that same date and requested that the Sheriff's sale be stayed until May 7, 2007. (S&K Defs. App. Opp'n Pl.'s Mot. Summ J. Ex. F.)[16] On April 25, 2007, S&K again wrote to the Sheriff and the Sheriff's' sale was again stayed. (Docket No.86-37.)

Plaintiff appealed the decision of Judge Della Vecchia to the Superior Court of Pennsylvania on January 18, 2007. (WAMU App. Ex. 13.) On March 16, 2007, Judge Della Vecchia filed an Opinion in support of his orders granting of summary judgment in favor of WAMU and against Plaintiff. (WAMU App. Ex. 11.) Plaintiff's appeal to the Superior Court of Pennsylvania was dismissed on September 28, 2007, without prejudice to her reinstating it in the event it was necessary following the conclusion of bankruptcy proceedings. (WAMU App. Ex. 12.)

The Bankruptcy Action

On May 25, 2007, Plaintiff filed for bankruptcy under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania. On her Schedule B, personal property, she did not list this action as a potential asset, although she did list two other cases she had pending at the time: a potential slip and fall case against Citizens Bank and her counterclaim in the Foreclosure Action, although it had already been dismissed. (S&K Defs.

---

[16]Docket No. 92.

App. Ex. H.) Plaintiff responds that the Foreclosure Action was on appeal at that time. The S&K Defendants note that Plaintiff admitted at her deposition that she had not filed the slip and fall case because she had been told it was not worth the time and effort to do so and the claim was barred by the statute of limitations. (Duraney Dep. at 127-28.)[17] Duraney also stated that she did not list this case because she did not think it had been filed prior her bankruptcy had been filed. (Duraney Dep. at 129.)

## IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986).

## IV.    DISCUSSION

Both WAMU and the S&K Defendants move for summary judgment on the grounds that: 1) the FDCPA claims are barred based on the doctrine of collateral estoppel because the same issues were litigated to a conclusion against Plaintiff in the Foreclosure Action; 2) the claims are

_____

[17]Plaintiff responds that the slip and fall occurred on August 25, 2005 so that when she filed for bankruptcy in May 2007, a lawsuit would not have been time barred. (Docket No. 95 ¶¶ 17-18.) However, she cites no evidence to support this statement.

barred by the doctrine of judicial estoppel because Plaintiff filed a bankruptcy proceeding after she initiated this case but failed to list this case as a potential asset; and 3) the statute of limitations bars the claims, which accrued more than one year before this case was filed on January 5, 2007. In addition, WAMU argues that it was not a "debt collector" under the FDCPA for attempting to collect on a claim that was owed to it as a mortgage holder, an act that was authorized by the mortgage note (including the collection of costs and attorney fees). The S&K Defendants do not advance this argument, but they contend that: 1) no claims can be asserted against Kevin Diskin because his acts were taken during litigation, filing a reply brief does not constitute "publishing a list of consumers who refuse to pay debts" and his communications were solely with Plaintiff's attorney; and 2) Lindsey Hansen's letter dated December 20, 2005 was not deceptive–it asked for two amounts, one of which was for attorney fees, and Plaintiff understood it very well (she simply concluded that she was not obligated to pay it).

In response, Plaintiff argues that: 1) this Court has already rejected the Defendants' collateral estoppel argument and that is the law of the case; 2) the doctrine of judicial estoppel does not apply when she has taken no "position," WAMU is the only creditor involved and it certainly was aware of this lawsuit and the other cases she named are not "worthless"; 3) this case was filed on December 19, 2006, the Foreclosure Action was served on her at 10:00 p.m. on December 19, 2005 and other acts occurred after that date, including the sending of a letter with inconsistent statements and her three attempts to pay the amount in arrears that were rejected; 4) WAMU could be considered a debt collector to the extent it was collecting attorney fees on behalf of S&K; 5) Diskin wrote to her before her attorney entered his appearance in the case and FDCPA claims are different from claims that arose after the foreclosure; and 6) her misunderstanding that she had to pay attorney fees, until she realized she did not have to pay such fees, cannot constitute a legal conclusion precluding her from pursuing her claims in this action.

Collateral Estoppel

Defendants argue that Plaintiff's claims are barred by the doctrine of collateral estoppel (also known as issue preclusion). Collateral estoppel, as well as res judicata (or claim

12

preclusion) were raised by the Defendants in their motions to dismiss. The Court concluded that the breach of contract claim (Count V), bad faith claim (Count VI), UTPCPL and FCEUA claims (Count VIII) and the claim for "joint and several liability" (Count IX) would be dismissed under the doctrine of res judicata, but not the FDCPA claims (Counts I and II) or the common law libel and slander claims (Counts III and IV) because they did not arise out of the same transaction or occurrence as the events underlying the Foreclosure Action.

With respect to the doctrine of collateral estoppel, although the Opinion contained a discussion of the elements of this defense, it did not reach a conclusion as to this argument. Thus, Plaintiff is incorrect when she argues that discussion of this issue is barred by "law of the case." As the Court of Appeals has held, "only legal issues decided expressly or by necessary implication are law of the case." Council Tree Communications, Inc. v. F.C.C., 503 F.3d 284, 292 n.5 (3d Cir. 2007). Moreover, even if the Court had concluded that Defendants had not demonstrated that collateral estoppel applied in the context of a motion to dismiss, such a conclusion would not bar further discussion of the issue in the context of a motion for summary judgment with a more fully developed record. See Hazen v. Modern Food Servs., Inc., 113 Fed. Appx. 442, 444 (3d Cir. 2004) (district court's denial of defendants' motion for judgment on the pleadings did not preclude revisiting issue in the context of a motion for summary judgment, at which point standard of review is very different).

"Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments." Lance v. Dennis, 546 U.S. 459, 466 (2006). See 28 U.S.C. § 1738 (state court rulings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of each state ... from which they are taken."). Thus, in determining the preclusive effect of the judgment of the Court of Common Pleas in the Foreclosure Action, this Court must apply Pennsylvania law.

The Pennsylvania Supreme Court has held that:

> The doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party

against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. Collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication..

Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005) (citations omitted).

Defendants argue that: 1) the issue of whether Plaintiff was provided complete Act 91 notices is identical to the issue raised in the Foreclosure Action; 2) there was a final judgment on the merits in that summary judgment was granted in favor of WAMU and against Plaintiff in the Foreclosure Action; 3) the party against whom the doctrine is asserted (Plaintiff) is the same; 4) she had a full and fair opportunity to litigate the issue in the Foreclosure Action; and 5) the determination was essential to the judgment. Plaintiff challenges only the first and fourth elements, that is, she contends that the issues are not identical and that she did not have a full and fair opportunity to litigate the issue in the Foreclosure Action.

WAMU asserts that the FDCPA claims in this lawsuit are based upon exactly the same set of facts and allegations upon which Plaintiff based her claims and defenses in the Foreclosure Action. It describes the essence of Plaintiff's allegations in this lawsuit are as follows:

1. WAMU improperly accelerated her mortgage without giving her advance notice under Act 6 of the correct amount due, threatened to take legal action in the Act 91 notices when these notices were defective, used "false court documents" to deceive her, failed to disclose in the October 24, 2005 Act 91 notice that she had a credit on her account and used notices which stated that they were "official" when they were defective (Compl. ¶¶ 57, 59-60, 62, 64, 67-68);
2. WAMU failed to provide the list of consumer credit counseling agencies and used notices that were defective for this reason (Compl. ¶¶ 58-60, 63, 67-68);
3. WAMU used "false court documents" which stated that she did not meet her obligations under the note, mortgage or September 28, 2005 repayment plan because she did not make any further payments after the first one (Compl. ¶ 65);
4. WAMU filed a Foreclosure Action seeking attorney fees and costs which it was not entitled to collect. (Compl. ¶ 66.)

The S&K Defendants note that they sent Plaintiff interrogatories asking her to specify the provisions of the FDCPA that they violated and in response she directed them to the allegations of her complaint. (Pl.'s Resp. S&K Defs. Interrog. Nos. 4, 5.)[18] Therefore, they argue that she cannot pursue any issues other than those alleged in the complaint, all of which were decided

_____

[18]S&K Defs. App. Ex. D.

14

against her favor in the Foreclosure Action.

In his opinion, Judge Della Vecchia noted that WAMU asserted that its October 24, 2005 Act 91 notice contained the list of county agencies and that the correspondence, amounting to approximately 67 pages, was marked in the pleadings as Exhibit E1. (WAMU App. Ex. 11 at 6.) He further noted that, despite Duraney's assertion that she never received a list of agencies, she was able to locate and apply for PHFA assistance on July 31, 2006, but her application was denied on September 27, 2006 (her application was marked in the pleadings as Exhibit F). (Id.)[19] The Judge noted Duraney's contention that WAMU's updated loan history showing an itemized accounting of the amounts due under the mortgage (marked in the pleadings as Exhibit G) was in error because it failed to show the correct balance owed under the mortgage, but he concluded that this argument was belied by the language of the September 28, 2005 repayment agreement, which provided that any amount she paid beyond what was owed in any particular payment would be held by WAMU until sufficient funds were accumulated to pay another full installment. (Id. at 6-7.) Judge Della Vecchia also concluded that the language of the September 28, 2005 agreement was clear that Plaintiff was responsible for making the payments by the dates due, and that:

> [i]f [she] was unsure of the payment method applicable under the "new agreement," it was her responsibility to ascertain such information. When [she] became aware that the payments were not being automatically withdrawn, it was her responsibility to tender said payments from whatever source she claims to have made them available.

(Id. at 8.) Finally, with respect to her argument that she did not owe attorney fees, Judge Della Vecchia found that, "[t]o maintain that a bank would not be due attorney fees associated with a foreclosure action following late and non-payment under the mortgage and further default under

---

[19]Plaintiff appealed from the PHFA's denial of her application for a mortgage assistance loan, and argued before the hearing examiner that it should not have been denied on the ground that she failed to have a face-to-face meeting within the prescribed time because WAMU had not complied with its statutory obligation to provide her with the list of consumer credit counseling agencies. In an opinion dated December 13, 2006, the examiner upheld the denial of the loan and concluded that Plaintiff "is not suffering financial hardship due to circumstances beyond [her] control based on: Total mortgage delinquency is not due to circumstances beyond [her] control." (S&K App. Opp'n Pl.'s Mot. Summ. J., Docket No. 92, Ex. A.)

the 'new agreement' is unrealistic and contrary to the plain language of the Promissory Note and/or the Mortgage itself." (Id.)

Judge Della Vecchia concluded:

> Although [Plaintiff] has maintained a genuine issue of material fact as to a necessary element, specifically the notice requirement, none is apparent. [WAMU] provided both proof of notice, evidenced by Exhibits E1 and F, and the only cognizable evidence of the balance represented in the pleadings evidenced by Exhibit G.

> To defeat a motion for summary judgment, this Court requires more than unsubstantiated claims of deficiencies in the pleadings. This Court is fully aware of the gravity of a decision to grant a motion for summary judgment, effectively preventing a party from "their day in court." However, this Court is also reluctant to deny such motion which causes the opposing party additional expense associated with further litigation when it finds the [Plaintiff] has not advanced a meritorious position.

(Id. at 9.) He also "noted that any claim by [Plaintiff] of lack of notice of the impending Mortgage Foreclosure was cured, notwithstanding any technical requirements, by this Court's Order of January 10, 2007 delaying foreclosure 120 days." (Id. at 6 n.2.)

Although the opinion is not a model of clarity, it appears to conclude either: 1) that Duraney in fact did receive the list of credit counseling agencies; and/or 2) that even if she did not, this technical failure was cured by the Court's order delaying foreclosure for 120 days. The Judge further concluded: 1) that it was Duraney's responsibility to make sure that WAMU received payments after September 28, 2005; 2) that WAMU's documents showed the correct balance; and 3) that WAMU was entitled to request attorney fees.

To the extent that this case raises again the validity of the Act 91 notices Plaintiff received, either because they allegedly failed to attach the list of consumer credit counseling agencies or because they failed to properly credit her account, this issue has been litigated and decided against Plaintiff in the Foreclosure Action. Moreover, the phrase "full and fair opportunity to litigate" does not mean that a party must agree with the result that obtained. The Restatement (Second) of Judgments, which has been adopted by the Pennsylvania Supreme Court, Clark v. Troutman, 502 A.2d 137 (Pa. 1985), provides that:

> d. When an issue is actually litigated. When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. An issue may be

> submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment (see Illustration 10), a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict. A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof.
>
> The determination of an issue by a judge in a proceeding conducted without a jury is conclusive in a subsequent action whether or not there would have been a right to a jury in that subsequent action if collateral estoppel did not apply. See Illustrations 10 and 11.

RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. d.

Duraney also argues that Judge Della Vecchia ignored her affidavit, in which she asserted that she had not received the names of consumer credit counseling agencies as required under Pennsylvania law.[20] It is not the role of this Court to evaluate whether Judge Della Vecchia's decision was well-founded. Such argument compels this Court to act as a Pennsylvania appellate court, and determine whether the Court of Common Pleas committed error. That is certainly not the function of this Court. Such argument, therefore is without merit.

Further, Duraney was represented by counsel in the Foreclosure Action (indeed, the same counsel who represents her in this case). Duraney filed an answer and counterclaim, she filed a motion for summary judgment and also responded to WAMU's motion for summary judgment. IDuraney's arguments were found unavailing and summary judgment was entered in favor of WAMU. To that end, Duraney certainly demonstrates that she had a full and fair opportunity to litigate.

Duraney has also argued that the complaint filed in the Foreclosure Action, and certain correspondence she received thereafter, also violated the FDCPA. Therefore, the Court will address these claims on the merits.

FDCPA Claims

WAMU moves for dismissal of the FDCPA claims on the grounds that it is not a "debt collector" under the Act because it was seeking to collect a debt owed to it, not a debt Duraney

---

[20]Judge Della Vecchia was not unaware of the existence of her affidavit: he cited it in reference to her claim that she did not receive the list of agencies until it was submitted in the litigation in May 2006. (Id. at 6) (citing Duraney Aff. ¶ 4.)

owed to someone else. Duraney contends that WAMU was attempting to collect a debt owed to another, namely attorney fees she allegedly owed to S&K.

The FDCPA provides a cause of action for certain abusive, deceptive and unfair debt collection practices by "debt collectors." "A significant purpose of the Act is not only to eliminate abusive practices by debt collectors, but 'to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692(e)). It is a remedial statute that courts "construe ... broadly, so as to effect its purpose." Id.

The FDCPA defines a debt collector as:

> any person who uses any instrumentality of interstate commerce of the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The statute defines a creditor as:

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4). Whether a defendant is a debt collector as defined by the FDCPA is a question of law. Pollice v. National Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000).

Because the statute defines debt collector as one who attempts to collects debts owed to another, it does not apply when a party (such as WAMU in this instance) attempts to collect a debt that is owed to itself, that is, a creditor. Pollice, 225 F.3d at 403. In addition, a number of courts have held that mortgage lenders and mortgage servicing companies (including WAMU specifically) are not debt collectors under the FDCPA for attempting to collect their own debts. See Humphrey v. Washington Mut. Bank, F.A., 2007 WL 1630639 (N.D. Ga. June 1, 2007) (WAMU is not a debt collector); Somin v. Total Community Mgmt. Corp., 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007) (same). See also Scott v. Wells Fargo Home Mortgage, Inc., 326 F. Supp. 2d 709, 717-18 (E.D. Va.), aff'd mem., 67 Fed. Appx. 238 (4th Cir. 2003) (mortgage lenders are not debt collectors); Oldroyd v. Associates Consumer Discount Co., 863 F. Supp. 237, 241 (E.D. Pa. 1994) (same).

Plaintiff argues that WAMU may be held liable under the FDCPA for its attempt to collect the attorney fees sought by S&K, debts owed to another. However, she has cited no authority in support of this argument. More significantly, as the Defendants observe, WAMU was seeking to be reimbursed for attorney fees it had already paid to S&K (as it was entitled to do under the mortgage and note) and thus the fees were not "owed to another" but to WAMU itself. WAMU Section Manager Charles D. Herndon, Jr. explains that:

> When a loan goes into default, WAMU must retain outside counsel to initiate foreclosure proceedings. WAMU is ultimately responsible for paying the fees and costs incurred by its outside counsel in these foreclosure proceedings.
>
> WAMU is authorized under the terms of its notes, mortgages, and related loan documents (including the note and mortgage between WAMU and Laurie Duraney in the present litigation) to recover collection costs and expenses from borrowers, including attorney's fees, when their loans are in default.
>
> Accordingly, when a borrower defaults on a mortgage loan and note, WAMU requires that the borrower reimburse WAMU for the costs involved in any collection efforts, including any attorney's fees incurred, before the mortgage can be reinstated.
>
> The purpose of the request that a borrower pay ... WAMU for the attorney's fees and costs that it has incurred (which is expressly authorized by the loan documents) is so that WAMU can be reimbursed for its own expenses in proceeding with the foreclosure. In doing so, WAMU is not acting as a debt collector on behalf of its outside counsel. Rather, WAMU is collecting on a debt owed to WAMU.
>
> In the case of the foreclosure proceedings relating to Laurie Duraney's defaulted mortgage, WAMU was not acting as a debt collector on behalf of Shapiro & Kreisman and was at all times seeking to recover its own attorney's fees and costs incurred in the collection efforts.

(Herndon Aff. ¶¶ 2-6.)[21]

Plaintiff's note with WAMU specifically provided that:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

(WAMU App. Ex. 1 at 2 ¶ 6(E).) Further, the mortgage provided that WAMU "shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph, including

---

[21]WAMU Reply Br. (Docket No. 99) Ex. A.

but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law." (WAMU App. Ex. 2 at 5 ¶ 21.)

As the Court of Appeals observed in <u>Pollice</u>:

> [F]ederal courts that have considered the issue have held that the client of an attorney who is a "debt collector," as defined in § 1692a(6), is vicariously liable for the attorney's misconduct if the client is itself a debt collector as defined in the statute. Thus, vicarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the attorney and the client are debt collectors as defined in § 1692a(6).

225 F.3d at 404-05 (quoting <u>First Interstate Bank of Fort Collins v. Soucie</u>, 924 P.2d 1200, 1202 (Colo. Ct. App. 1996)).

WAMU is not a debt collector, therefore, it cannot be held vicariously liable for the actions of its attorney, regardless of whether the attorney is a debt collector under the Act. Therefore, the FDCPA claims against WAMU must be dismissed.

The S&K Defendants have not moved for dismissal of the FDCPA claims on the grounds that they are not debt collectors,[22] and the law is clear that lawyers who regularly engage in debt collection or debt collection litigation meet the definition of debt collector under the FDCPA. See <u>Heintz v. Jenkins</u>, 514 U.S. 291 (1995); <u>Piper v. Portnoff Law Assocs., Ltd.</u>, 396 F.3d 227, 232 (3d Cir. 2005).

However, the S&K Defendants argue that: 1) no claims can be asserted against Kevin Diskin because his acts were taken during litigation, filing a reply brief does not constitute "publishing a list of consumers who refuse to pay debts" and his communications were solely with Plaintiff's attorney; and 2) Lindsey Hansen's letter sent on December 20, 2005 was not deceptive–it asked for two amounts, one of which was for attorney fees, and Plaintiff understood it very well (she simply concluded that she was not obligated to pay it). In response, Duraney contends that: 1) Diskin wrote to her before her attorney entered his appearance in the case and FDCPA claims are different from claims that arose after the foreclosure; and 2) her misunderstanding that she had to pay attorney fees, until she realized she did not have to pay

---

[22]The S&K Defendants note that they asserted this defense in their answer. (Docket No. 90 ¶ 5.) Nevertheless, they have not moved for summary judgment on this ground.

such fees, cannot constitute a legal conclusion precluding her from pursuing her claims here.

<u>Communications with a Consumer's Attorney</u>

There is a split of authority on the issue of whether communications with a debtor's attorney are actionable under the FDCPA. The Court of Appeals for the Ninth Circuit has held that "communications directed solely to a debtor's attorney are not actionable under the Act." <u>Guerrero v. RJM Acquisitions LLC</u>, 499 F.3d 926, 934 (9th Cir. 2007). This conclusion was based on two considerations: 1) a consumer and his attorney are not one and the same for the purposes of the Act, which contains distinctions between these two entities;[23] and 2) the purpose of the Act is to protect unsophisticated consumers from abusive collection practices, but attorneys act as intermediaries to bear the brunt of overreaching debt collection practices from which debtors and their loved ones should be protected. <u>Id.</u> at 935-37. <u>See also</u> <u>Kropelnicki v. Siegel</u>, 290 F.3d 118, 127-28 (2d Cir. 2002); <u>Diesi v. Shapiro</u>, 330 F. Supp. 2d 1002, 1004 (C.D. Ill. 2004); <u>Tromba v. M.R.S. Associates, Inc.</u>, 323 F. Supp. 2d 424, 428 (E.D.N.Y. 2004).

On the other hand, the Court of Appeals for the Fourth Circuit has held that communications with a consumer's attorney fit within the statutory definition of "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium.'" <u>Sayyed v. Wolpoff & Abramson</u>, 485 F.3d 226, 232-33 (4th Cir. 2007) (quoting § 1692a(2)). The Court of Appeals for the Seventh Circuit, charting a somewhat different course, has concluded that the Act does apply to communications with a consumer's attorney, but that such communications should be evaluated under a different standard than that employed when the communication is directed at the consumer (the least sophisticated debtor standard). With respect to communications with a consumer's attorney, "we conclude that a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." <u>Evory v. RJM Acquisitions Funding L.L.C.</u>, 505 F.3d 769, 775 (7th Cir. 2007).

---

[23]Indeed, if the debt collector knows the consumer is represented by counsel, he may not communicate with the consumer directly but must communicate only with counsel. 15 U.S.C. § 1692c(a)(2).

The Court of Appeals for the Third Circuit has not addressed this issue. This Court finds the reasoning of the courts in <u>Guerrero</u> and <u>Kropelnicki</u> more persuasive than that of the court in <u>Sayyed</u>. As the court in <u>Guerrero</u> observed, the <u>Sayyed</u> court: 1) did not acknowledge the great weight of authority holding to the contrary; 2) relied upon the implicit assumption that the Supreme Court resolved this issue in <u>Heintz</u> because the communication in that case was sent to the consumer's attorney, but that fact was not addressed by anyone; and 3) found support in § 1692c(a)(2) that actually cuts in the opposite direction, demonstrating that the Act contemplates different roles for and different treatment of attorneys and their clients. 499 F.3d at 938.

Moreover, even applying the Seventh Circuit's approach, Duraney has not even argued, much less demonstrated, that her lawyer was likely to be deceived by the communications he received. Indeed, the letter sent to Attorney Askin explicitly acknowledges that he (and his client) understood that attorney fees were being demanded, but Askin stated that Duraney did not have the funds to pay such fees at that time, and he concurred in her assessment that she did not have to pay them in any event because of the allegedly defective Act 91 notices. Thus, the communications between the S&K Defendants and Plaintiff's attorney cannot form the basis of her FDCPA claims. Plaintiff acknowledges that she never had any form of communication directly with Diskin. (Duraney Dep. at 103-04.)[24] The claims against Diskin all arise out of communications between Diskin and Attorney Askin, and are therefore barred from being further pursued in this case. The same is true with respect to Smith's June 14, 2006 letter, which was sent to Attorney Askin. Askin has not even attempted to argue that this letter was deceptive to him.

<u>Applicability of § 1692d to Filing of a Complaint</u>

The FDCPA applies to abusive actions taken during litigation. <u>Heintz</u>, 514 U.S. at 299. However, as the S&K Defendants note, § 1692d prohibits "conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt" and

_____

[24]Docket No. 75 Ex. E.

this section does not apply to the filing of a complaint to initiate litigation. As explained by the Court of Appeals for the Sixth Circuit:

> Even when viewed from the perspective of an unsophisticated consumer, the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor. *Any* attempt to collect a defaulted debt will be unwanted by a debtor, but employing the court system in the way alleged by [the plaintiff] cannot be said to be an abusive tactic under the FDCPA. See Watkins v. Peterson Enters., 57 F. Supp. 2d 1102, 1109 (E.D. Wash.1999) (holding that the serving of writs of garnishment that overstated the debt by including costs and fees associated with prior unsuccessful writs was not an abusive practice because the types of behavior described in 15 U.S.C. § 1692d "are a far cry from that at issue"). We therefore find no error in the district court's dismissal of [the plaintiff's] claim under 15 U.S.C. § 1692d.

Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330-31 (6th Cir. 2006). Thus, the filing of the Foreclosure Action in this case cannot form the basis of an FDCPA claim under § 1692d.

In addition, Plaintiff alleges that Diskin "published [her] on a list of consumers who refuse to pay when he filed a Reply pleading (paragraph 19) in Common Pleas Court which states that 'she has chosen through counsel advised (sic) to submit less (sic) what is owed,' which publication of false information on the public record is a violation of 15 U.S.C. § 1692d(3)." (Compl. ¶ 73.) However, as the S&K Defendants note, the filing of a Reply to New Matter cannot constitute a "publication of a list of consumers who allegedly refuse to pay debts," § 1692d(3), because the statute uses the word "consumers" in the plural and the purpose of this section is to prohibit "shame lists." Plaintiff has not responded to this argument. Thus, Diskin's actions did not violate § 1692d as a matter of law.

Finally, Plaintiff argues that the publication by the sheriff of a Sheriff's sale can be attributed to Diskin. However, the FDCPA provides that the term debt collector does not include "any person while serving or attempting to serve legal process on any other person on any other person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D). The S&K Defendants note that, under Pennsylvania law, a foreclosure cannot take place until the notice required by Rule 3129.2 has been served, PA. R. CIV. P. 3129.1, and the notice "shall also be given by publication by the sheriff once a week for three successive weeks in a newspaper of general circulation in the county and in the legal publication, if any, designated by rule of court

for publication of notices." Pa. R. Civ. P. 3129.2(d). Thus, by definition, the publication by the sheriff of the notices is the service of legal process and cannot constitute debt collection activities for purposes of the FDCPA.

Was the December 20, 2005 Letter Deceptive?

Finally, the S&K Defendants argue that the record establishes that the December 20, 2005 letter was not deceptive. Rather, it requested two amounts–$2,967.04 to reinstate the mortgage and $1,219.50 in attorney fees. They note that Duraney knew very well what was being asked of her. In fact, in her complaint in this case, she alleged that the letter was deceptive because "it asserted that [she] owed attorney fees and costs, a violation of 15 U.S.C. § 1692(e)(2)(A) and (B)." (Compl. ¶ 75.)

In her own handwritten notes from the December 22, 2005 message she left for Hansen, Duraney wrote that she could not pay legal fees in a lump sum and needed a payment plan. (S&K Defs. App. Ex. G.) Moreover, at her deposition, she testified that she understood that she needed to pay attorney fees, that she made a note at the time of the call on December 22, 2005 in which she indicated that she could not pay them in a lump sum but needed a payment plan, and that she later decided she did not need to pay them at all after her attorney advised her that the Act 91 notices were deficient. (Duraney Dep. at 286.)

Finally, in his letter dated January 20, 2006, Attorney Askin wrote that Duraney did not have the funds to pay the $1,219.50 in requested attorney fees and that she believed she did not have to pay them because of the alleged defective Act 91 notices. (S&K Defs. App. Ex. F.)

As the Court of Appeals has held:

> Because the FDCPA is a remedial statute, we construe its language broadly, so as to effect its purpose. Accordingly, in considering claims under another provision of the FDCPA, we have held that certain communications from lenders to debtors should be analyzed from the perspective of the "least sophisticated debtor." See Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000) (applying the perspective of the least sophisticated debtor to the notice provision of the Act, § 1692g) (citation omitted); Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991) ("Statutory notice under the Act is to be interpreted from the perspective of the 'least sophisticated debtor.'")
>
> ...
>
> The least sophisticated debtor standard requires more than "simply

> examining whether particular language would deceive or mislead a reasonable
> debtor" because a communication that would not deceive or mislead a reasonable
> debtor might still deceive or mislead the least sophisticated debtor. Quadramed,
> 225 F.3d at 354 (internal quotation marks and citation omitted). This lower
> standard comports with a basic purpose of the FDCPA: as previously stated, to
> protect "all consumers, the gullible as well as the shrewd," "the trusting as well as
> the suspicious," from abusive debt collection practices. However, while the least
> sophisticated debtor standard protects naive consumers, "it also prevents liability
> for bizarre or idiosyncratic interpretations of collection notices by preserving a
> quotient of reasonableness and presuming a basic level of understanding and
> willingness to read with care." Quadramed, 225 F.3d at 354-55 (internal
> quotation marks and citation omitted).

Brown, 464 F.3d at 453-54 (footnote omitted). In Brown, the court held that a collection letter

stating that, unless payment arrangements were made within five days the matter could be

referred to an attorney and suit could be filed, was deceptive to the least sophisticated debtor

because the sender had no intention of taking these actions.

However, in this case, even applying the least sophisticated debtor standard, Duraney

cannot maintain that the December 20, 2005 letter was deceptive when she clearly understood

exactly what it meant. The fact that duraney and her lawyer, at some time, concluded at some

point that she did not have to pay attorney fees because of deficient Act 91 notices does not

undermine the fact that the letter itself unambiguously demanded that she pay such fees.

The Court of Appeals for the Seventh Circuit has held that:

> when a debtor has contractually agreed to pay attorneys' fees and collection costs,
> a debt collector may, without a court's permission, state those fees and costs and
> include that amount in the dunning letter. Doing so does not violate the FDCPA.
> Indeed, refusing to quantify an amount that the debt collector is trying to collect
> could be construed as falsely stating the amount of debt.

Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565 (7th Cir. 2004) (citation omitted). The court

held that the letter could have conceivably misled an unsophisticated consumer because it more

than doubled the consumer's original debt ($122.06) without explaining that the collector was

seeking attorney fees of $250. However, the court indicated that "[o]ne simple way to comply

with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the

total amount of the debt." Id. at 566. See Singer v. Pierce & Assocs., P.C., 383 F.3d 596, 598

(7th Cir. 2004) (debt collector itemized attorney fees that it was entitled to collect from

mortgagor and therefore did not mislead in violation of the FDCPA, distinguishing Fields).

In this case, the letter clearly itemized the charges and thus did not mislead Plaintiff. Therefore, she cannot maintain a claim under the FDCPA arising out of the December 20, 2005 letter.

## V.    CONCLUSION

Based on the foregoing, the motions for summary judgment filed by Defendants Washington Mutual Bank, F.A., Shapiro & Kreisman, LLC, Kevin Diskin, Megan D.H. Smith and Lindsey Hansen shall be granted and the motion for summary judgment filed by Plaintiff Laurie L. Duraney shall be denied.  An appropriate order will follow.


s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    William F. Askin, Esquire
1047 McKinney Lane
Pittsburgh, PA 15220

James R. Schadel, Esquire
Gregory J. Norton, Esquire
Weinheimer Schadel & Haber
602 Law & Finance Building
429 Fourth Avenue
Pittsburgh, PA 15219

Gary B. Hunt, Esquire
Christopher W. Cahillane, Esquire
Tucker Arensberg
1500 One PPG Place
Pittsburgh, PA 15222